UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TYANE WASHINGTON<br>c/o Hux Law Firm, LLC<br>3 Severance Circle #18147<br>Cleveland Heights, OH 44118 | ) ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| OHIO DEPARTMENT OF<br>REABILITATION<br>AND CORRECTIONS<br>d/b/a GRAFTON CORRECTIONAL<br>INSTITUTION<br>2500Avon-Beldon Road<br>Grafton, Ohio 44044 | ) ) ) ) ) ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| Defendant. | | |

Plaintiff, Tyane Washington, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

**PARTIES**

1. Tyane Washington is a resident, City of Brandywine, Charles County, Maryland.

2. Defendant, Ohio Department of Corrections d/b/a Grafton Correctional Institution ("GCI") is an agent or instrumentality of the State of Ohio located at 2500 Avon-Beldon Road., Grafton, Ohio 44044.

**JURISDICTION AND VENUE**

3. Jurisdiction is proper over Defendants pursuant to 42 U.S.C. § 12112 in that Plaintiff is alleging a federal law claim arising under the Americans with Disabilities Act of 1990 ("ADA").

4. Venue is properly placed in the United States District Court for the Northern District of

Ohio, Eastern Division because it is district court for the district, division and county with which the Defendant operates and conducts business.

5. Prior to proceeding this action, Washington filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2018-02312, alleging that the Defendant had discriminated against her because of her disability.

6. Washington was mailed her Right to Sue Notice from the EEOC on or about March 15, 2020.

7. A true and accurate copy of Washington's Right to Sue Notice is attached as Exhibit 1.

8. Washington has properly exhausted her administrative remedies pursuant to 29 U.S.C. §626(e).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

10. Washington is a former employee of GCI.

11. On or about March 2, 2017 GCI interviewed Washington for a position as a Corrections Officer.

12. During the interview, Washington advised GCI of her disability, epilepsy.

13. Washington informed GCI that she would not be able to work third shift because the medication she took to cope with her disability made her drowsy.

14. GCI told Washington it would accommodate her disability by not making her work third shift or mandatory overtime.

15. On or about June 12, 2017, Washington began working as a Corrections Officer at GCI.

16. At the time of her hiring, Washington reminded GCI that she had a disability that need an accommodation under the ADA.

2

17. From June 12, 2017 until August 29, 2017, GCI accommodated Washington's disability.

18. On or about August 30, 2017 GCI informed Washington that it would no longer accommodate her disability ("Stop Accommodation Meeting").

19. During Stop Accommodation Meeting, GCI told Washington that she must work third shift and can no longer be skipped in the rotation of overtime.

20. Washington reminded GCI that due to her disability she could not work third shift.

21. GCI told Washington that Washington could not have "special accommodations" unless it was approved by the Columbus office.

22. The "special accommodations" GCI was referring to was Washington's ADA accommodations.

23. On or about August 30, 2017, in a separate meeting, Washington told to Deputy Warden Jennifer Gillece that she was being discriminated against because of her disability.

24. Deputy Warden Gillece stated that every time Washington was mandated for overtime, she would have to refuse until her accommodation was approved.

25. Deputy Warden Gillece also gave Washington her ADA paperwork and stated that GCI "dropped the ball" and should have provided Washington with ADA paperwork sooner.

26. Washington signed up for the 6 a.m-2 p.m. shift on several occasions but was always denied.

27. On or about September 10, 2017, a GCI employee informed Washington that GCI was trying to build a case against Washington to terminated her due to her ADA accommodation request.

28. On or about September 13, 2017, Washington submitted her ADA accommodation paperwork as required by GCI.

29. On or about September 13, 2017, Washington detailed her complaints of disability discrimination in an email to GCI's Warden, LaShann Eppinger ("Discrimination Complaint").

30. On or about November 5, 2017, Washington was injured at GCI and did not return to full duty until January 17, 2018.

31. After Washington's injury, numerous employees commented that she was "always in the hospital."

32. On or about January 22, 2018, Washington was called into GCI and was terminated on a probationary removal.

33. The probationary removal was based on Washington allegedly not meeting expectations.

34. In Washington's probationary review from December 21, 2017, she was rated as "meets expectations" in every category.

35. GCI's probationary removal of Washington was pretextual.

36. GCI terminated Washington because of her disability.

37. In the alternative, GCI terminated Washington because of the perception of her disability.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA (FEDERAL)

38. Washington restates each and every paragraph of this Complaint as though it were fully restated herein.

39. Washington suffers from epilepsy.

40. Epilepsy is a recognized disability under the ADA.

41. Washington was discriminated against due to her disability.

42. Washington made several attempts to work overtime on the dayshift but was repeatedly refused by GCI.

43. Throughout her employment, Washington was fully competent to perform essential job duties.

44. GCI failed to provide proper accommodation for Washington's disability.

45. Soon after Stop Accommodation Meeting, Washington learned that GCI was deliberately trying to build a case against her to justify terminating her based on her accommodations.

46. On or about January 22, 2018, GCI terminated Washington.

47. GCI terminated Washington's employment based on her disability.

48. In the alternative, GCI terminated Washington's employment based on her perceived disability.

49. GCI violated 42 U.S.C. § 12112(a)(b)(1)(2) when it discharged Washington based on her disability.

50. In the alternative, GCI violated 42 U.S.C. § 12112(a)(b)(1)(2) when it discharged Washington based on her perceived disability.

51. Pursuant to 42 U.S.C.A § 2000e-3, it is an unlawful discriminatory practice "for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

52. GCI violated 42 U.S.C. § 12112(2)(b)(1)(2) by discriminating against Washington due to her disability.

53. As a direct and proximate result of GCI's actions, Washington has suffered and will continue to suffer injury and damages.

**COUNT II:  RETALIATORY DISCRIMINATION(FEDERAL)**

54. Washington restates each and every prior paragraph of this complaint, as if it were fully restated herein.

55. As a result of the Defendant's discriminatory conduct described above, Washington complained about being discriminated against because of her disability.

56. Washington complained about discrimination on the basis of her disability in writing in Disability Complaint.

57. Washington had received a probationary review, which stated that she had met all expectations.

58. GCI's actions were retaliatory in nature based on Washington's opposition to the unlawful discriminatory conduct.

59. Pursuant to 42 U.S.C.A § 2000e-3, it is an unlawful discriminatory practice "for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

60. As a direct and proximate cause of GCI's retaliatory discrimination against and termination of Washington, she suffered and will continue to suffer damages.

### COUNT III: FAILURE TO PROVIDE REASONABLE ACCOMMODATION(FEDERAL)

61. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

62. GCI had knowledge of Washington's disability during her employment.

63. Washington requested accommodations from GCI to assist with her disabilities including her restrictions due to a doctor's order.

64. Washington's requested accommodations were reasonable.

65. Washington's requested accommodations did not present an undue hardship on GCI in providing those reasonable accommodations.

66. GCI knew that Washington would be able to meet all the expectations of being a corrections officer.

67. GCI failed to provide reasonable accommodations to Washington that would have allowed her to perform her job duties as well as ease the effects of her disability.

68. GCI failed to provide the proper process for acquiring a needed accommodation from the State of Ohio.

69. Pursuant to 42 U.S.C. § 12112(b)(5)(A), it is unlawful "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity:…."

70. As a direct and proximate result of GCI's conduct, Washington suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Washington demands from Defendant the following:

(a) Issue a permanent injunction:

(i) Requiring GCI to abolish discrimination, harassment, and retaliation;

(ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to

promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring GCI to expunge her personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Washington for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $75,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $75,000;

(e) An award of reasonable attorney's fees and non-taxable costs for Washington claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ James J. Hux
James J. Hux (0092992)
**HUX LAW FIRM, LLC**
3 Severance Circle #18147
Cleveland Heights, Ohio 44118
Phone: (937) 315-1106
Fax:    (216) 359-7760
Email: jhux@huxlawfirm.com

*Attorney for Plaintiff Tyane Washington*

8

## **JURY DEMAND**

Plaintiff Tyane Washington demands a trial by jury by the maximum number of jurors permitted.

s/James J. Hux
James J. Hux (0092992)
